**U.S. Equal Employment**
**Opportunity Commission**
**21 South 5th Street**
**Philadelphia, PA 19106**
**(215) 440-2688**
**Terrence R. Cook, Senior Trial Attorney**
**Attorney for Plaintiff Equal Employment Opportunity Commission**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | ) Civil Action No. ) ) |
| v. | ) ) COMPLAINT AND |
| COMCAST CABLE COMMUNICATIONS, LLC., | ) JURY TRIAL DEMAND ) ) |
| Defendant. | ) |

### NATURE OF ACTION

The United States Equal Employment Opportunity Commission (the "Commission"), brings this action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation and to provide appropriate relief to Christopher Dare, a male, who was adversely affected by such practices while employed by Defendant, Comcast Cable Communications, LLC., ("Defendant"). As alleged with greater particularity in paragraphs 7 and 8 below, the Commission alleges that during his employment, Christopher Dare was subjected to a hostile work environment based on his sex, male. Although Mr. Dare complained about the sexual harassment, Defendant failed to take any action to stop the harassment, and it continued unabated.

The Commission also alleges that Defendant retaliated against Mr. Dare after he complained

of discrimination by holding his work up to ridicule, subjecting him to unwarranted discipline, and attempting to fire him from his subsequent employment with a contractor who works with Defendant. As a result of the hostile work environment and unlawful retaliation, Christopher Dare was constructively discharged from his employment and has suffered damages, including but not limited to, emotional distress damages and back pay losses.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Jersey.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times mentioned herein, Defendant, Comcast Cable Communications, LLC., (the "Employer"), has continuously been doing business in the State of New Jersey and the City of Vineland, and has continuously had at least 15 employees.

5.  At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of

-2-

Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Christopher Dare filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least November 2002, Defendant Employer has engaged in unlawful employment practices at its Vineland, New Jersey facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by discriminating against Christopher Dare by subjecting him to a sexually hostile work environment based on his sex (male) as follows:

    a. Christopher Dare began his employment with Defendant on August 30, 2000, as an Installer. Mr. Dare was last employed by Defendant as a Communications Technician 3, until his constructive discharge, on October 27, 2004.

    b. On or about November 2, 2002, while on a service call, Mr. Dare was propositioned and sexually assaulted by a male customer.

    c. Mr. Dare immediately reported this incident to his supervisor, Daniel McCafferty, who laughed at Mr. Dare, and took no action. However, upon information and belief, Mr. McCafferty communicated the nature of Mr. Dare's complaint to other employees.

    d. Immediately following his complaint to Daniel McCafferty, Mr. Dare began to be sexually harassed by his male co-workers about the incident. For example, Mr. Dare's co-workers would laugh at him and make disparaging comments to him such as "hey faggot! I heard you almost got raped!," "Yeah, I heard you had a fun day," "you probably wanted it," "was he [the male customer] hard or did he jerk off?" In addition to these derogatory comments, co-workers also

-3-

asked Mr. Dare, "what's that white spot on your pants?" a reference to male ejaculate.

    e.  The next day, the male customer called Mr. Dare on his cell phone. Mr. Dare reported this unwelcome call to Mr. McCafferty, and further asked him for the contact information for Defendant's Technical Operations Manager. McCafferty, however, told Mr. Dare that his complaint should not be forwarded to Defendant's Technical Operations Manager because it was not an emergency.

    f.  Over Mr. McCafferty's objections, on or about November 4, 2002, Mr. Dare contacted Defendant's Technical Operations Manager, Defendant's Technical Operations Director and Defendant's Human Resources Manager, to discuss the sexual harassment he had experienced from his co-workers. Despite Mr. Dare's complaint to Defendant's Technical Operations Manager, Defendant's Technical Operations Director and Defendant's Human Resources Manager, Defendant took no action and the sexual harassment towards Mr. Dare continued.

    g.  The day after the meeting with Defendant's Technical Operations Director and Defendant's human resources official, Mr. Dare was given a work order to return to the home of the customer who had sexually assaulted him. When Mr. Dare refused to accept the work order, McCafferty threatened to fire Mr. Dare and gave him a written warning for refusing to carry out the work order.

    h.  Despite his numerous complaints of sexual harassment, Mr. Dare continued to be harassed by both his supervisor, Daniel McCafferty, and his male co-workers who continually referred to him in sexually derogatory terms, including, "homo," "fairy," "faggot" and "sissy."

    i.  Following the sexual assault by a male customer, whenever Mr. Dare would return from being off from work, co-workers would ask him "what, were you on vacation

-4-

with your boyfriend?"

    j. Due to Defendant's lack of response to Mr. Dare's complaints, the sexual harassment escalated to physical threats. A male co-worker cursed at Mr. Dare calling him a "fucking faggot ", and stating, "you fucking fag, if you don't do the job, I am going to beat your ass behind the railroad track and you're dead tomorrow." In response to Mr. Dare's complaint about this exchange, he was told by Defendant's Human Resources Manager to apologize to the male coworker, or he [Dare] could lose his job. Further, Mr. Dare was told by Defendant that because the threat was from a co-worker, it was not an issue.

    k. As a result of the sexually hostile work environment and Defendant's failure to take any remedial measures, Mr. Dare was constructively discharged on October 27, 2004.

    8. Since at least July 2003, Defendant Employer has engaged in unlawful employment practices at its Vineland, New Jersey facility in violation of § 704 (a)(1) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against Christopher Dare based on retaliation. The unlawful employment practices included, but are not limited, to the following:

    a. After Mr. Dare's sexual harassment complaints, Defendant retaliated against him by holding his work up to ridicule. Supervisor Dennis Connell openly displayed items that Mr. Dare had damaged so that technicians could further harass him.

    b. Mr. Dare was also retaliated against when he was subjected to discipline for questionable infractions. For example, on or about March 23, 2004, Mr. Dare was written up for abusing and using all of his personal and flexible days by his Supervisor, Jose Ramos. Yet, at the time he was written-up, Mr. Dare had two-weeks vacation time remaining.

    c. Following Mr. Dare's constructive discharge in October 2004,

Defendant's retaliatory and harassing conduct towards Mr. Dare continued. The retaliation took the form of Defendant seeking to get Mr. Dare fired from his subsequent employment with a sub-contractor for Defendant.

    d. Defendant's Supervisor Dennis Connell, referencing Christopher Dare, stated, "we'll get rid of him soon." Defendant's Supervisor Mike Galardi called Mr. Dare an "asshole," and further stated that they [Defendant Employer Comcast] would find a way to get him [Dare] out of his subsequent employment because they did not want him to work for the company.

    e. On or about January 19, 2005, one of Defendant's supervisors contacted Mr. Dare's subsequent employer and told them not to give Mr. Dare any more work, because allegedly, Mr. Dare had not returned the van key to Defendant.

    f. Defendant's Supervisors Mike Galardi, Jose Ramos and Dennis Connell advised Mr. Dare's subsequent employer that Mr. Dare was damaging property and not performing his job properly. Yet, Mr. Dare's subsequent employer never received any customer complaints about Mr. Dare.

    g. After receiving multiple complaints about Mr. Dare from Defendant's supervisors, Mr. Dare's route was reassigned.

    h. Suspecting that Defendant was attempting to get Mr. Dare fired, the subsequent employer changed Mr. Dare's technician number to see if the complaints would continue. While working under a different number, the subsequent employer did not receive any complaints from Defendant's managers about Mr. Dare.

9. The effect of the practices complained of in paragraphs 7 and 8 above, has been to deprive Christopher Dare of equal employment opportunities and otherwise affect adversely

his status as an employee because of his sex and retaliation.

10. The unlawful employment practices complained of in paragraphs 7 and 8 above were intentional.

11. The unlawful employment practices complained of in paragraphs 7 and 8 were done with malice or with reckless indifference to the federally protected rights of Christopher Dare.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in sexual harassment and creating a hostile environment based on sex and any other employment practice which discriminates on the basis of sex or retaliation.

B. Order Defendant employer to institute and carry out policies, practices, and programs which provide a work environment free of sexual harassment and retaliation and provide equal employment opportunities for all employees.

C. Order Defendant employer to make whole Mr. Dare, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant employer to make whole Mr. Dare by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including compensatory damages for pain and suffering, in amounts to be determined at trial.

E. Order Defendant Employer to institute and carry out complaint procedures which

encourage employees to come forward with complaints regarding violations of its policies against discrimination, harassment and retaliation.

     F. Order Defendant Employer to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-harassment; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints.

     G. Order Defendant to pay Mr. Dare punitive damages for its malicious and reckless conduct described in the paragraphs above, in amounts to be determined at trial.

     H. Grant such further relief as the Court deems necessary and proper in the public interest.

     G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

        Respectfully submitted,

        U.S. EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION

        RONALD S. COOPER
        GENERAL COUNSEL

        JAMES L. LEE
        DEPUTY GENERAL COUNSEL

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        Washington, D.C.

        _____
        JACQUELINE H. McNAIR
        Regional Attorney

        _____
        JUDITH A. O'BOYLE
        Supervisory Trial Attorney

        _____
        TERRENCE R. COOK
        Senior Trial Attorney
        U.S. EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        21 S. 5th Street, Suite 400
        Philadelphia PA 19106
        Telephone:  (215) 440-2688
        Facsimile: (215) 440-2848